## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY E. WARREN | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | NO. 07-3367 |
| Defendant | | |

## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS                                   September 30, 2008
UNITED STATES MAGISTRATE JUDGE

      Anthony E. Warren ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 1383(c)(3), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"). Plaintiff has filed a brief in support of his request for review and the Commissioner has responded to it. For the reasons set forth below, it is recommended that Plaintiff's Request for Review be DENIED and Judgment be entered in favor of Defendant and against Plaintiff.

## I. PROCEDURAL HISTORY[1]

      On September 19, 2005, Plaintiff applied for SSI alleging disability, since January 1, 1995, as a result of foot, back, arm and hand conditions, an ulcer, depression, and memory loss. (R. 40, 56). Benefits were denied, initially, whereupon, Plaintiff requested and was granted an administrative hearing. On September 26, 2006, Plaintiff appeared before Javier A. Arrastia, Administrative Law Judge ("ALJ"), for an administrative hearing; Plaintiff and Garry Young, a

---

[1]The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Complaint and Plaintiff's Brief and Statement of Issues in Support of his Request for Review, Defendant's Response to Request for Review of Plaintiff, and the administrative record ("R."), including all exhibits thereto.

vocational expert ("VE"), testified at the hearing. (R. 239-59). On December 21, 2006, the ALJ,

using the sequential evaluation process for disability,[2] issued an unfavorable decision. (R. 13-19).

On June 14, 2007, the Appeals Council denied Plaintiff's request for review, making the ALJ's

findings the final decision of the Commissioner. (R. 3-5). This case was referred to the undersigned

by the Honorable Thomas M. Golden, under the authority of 28 U.S.C. § 636(b)(1)(B), for

preparation of a report and recommendation.

## II.    FACTUAL BACKGROUND

A.    <u>Personal History</u>

Plaintiff, born on February 10, 1966, was 40 years old at the time of his administrative

hearing. (R. 40). He has an eleventh grade education and no past relevant work. (R. 14). Plaintiff

lives in a dormitory at New Jerusalem Now, a facility for recovering addicts. (R. 223, 246). He has

two adult children, who reside with their mother. (R. 122).

---

[2]The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1.  If claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 416.920(b).
>
> 2.  If claimant is found not to have a severe impairment which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 416.920(c).
>
> 3.  If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 416.920(d).
>
> 4.  If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 416.920(f).
>
> 5.  The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled. *See* 20 C.F.R. § 416.920(g).

B.      Plaintiff's Testimony

Plaintiff testified about his mental impairment, including his significant memory problems, at the administrative hearing.  Specifically, Plaintiff could not remember:  how long he attended school, (R. 250), any of his past work, (R. 252), how long ago he left his previous housing arrangement or how long he was there, (R. 247, 248), the medication he once took or when he stopped taking it, (R. 245), or when he last saw his children.  (R. 250).  Plaintiff has difficulty reading, because he loses focus and is unable to understand the words he reads.  (R. 250).

At New Jerusalem Now, Plaintiff attends three group therapy sessions daily; each session lasts one and one-half hours or more.  (R. 248-49).  Also, Plaintiff must perform community service; he prefers solitary assignments because he does not feel comfortable around other people.  (R. 251, 253-54).  From time to time, he locks himself in his room for days at a time in order to avoid being around other people.  (R. 254).

Plaintiff is unable to travel alone; he must be accompanied, even on public transportation, in order to avoid getting lost.  (R. 253).  He stopped seeing his mental health provider because the friend who drove him before he lived at New Jerusalem Now refused to keep taking him and New Jerusalem Now has not been able to arrange transportation for him.  (R. 244-45).  Plaintiff was escorted to the administrative hearing by someone from New Jerusalem Now.  (R. 253).

C.      Medical History[3]

The record contains evidence concerning Plaintiff's mental impairment.  On October 7, 2005, D.D. Holland, Ph.D., of WES Health Centers, ("WES") completed a Comprehensive Biopsychosocial Evaluation.  (R. 122-41).[4]  Plaintiff reported that he lived in a rooming house and

---

[3]Plaintiff's claims of error relate only to his mental impairment, hence the court will only address mental health records.
[4]A second copy of this evaluation appears at pages 183 to 202 of the administrative record.

had just been discharged from New Jerusalem Now, a drug addiction rehabilitation facility; he had been clean for three months.   Previously he had resided at New Jerusalem Now for three to four years. (R. 122, 124).  Plaintiff was referred to WES by his primary care physician for depression. *Id.*  Plaintiff reported serious memory problems and reliance upon others (his friend Shanelle and his father) to keep appointments. (R. 122-23).  Plaintiff began daily cocaine abuse while in his 20's but, by October 2005, he had been drug free for three months. (R. 124).  As a child, Plaintiff reportedly suffered weekly physical abuse from his mother. (R. 131).

Upon examination, Dr. Holland found Plaintiff to be cooperative, with:  poor eye contact, psychomotor retardation, significant recent and remote memory loss, suicidal and homicidal thoughts, paranoid delusions, a depressed mood, and a sad affect. (R. 136).  Dr. Holland opined that Plaintiff avoided people, attempting to shut out memories of his past abuse. *Id.*  Plaintiff was diagnosed as suffering from major depression,[5] post traumatic stress disorder,[6] dysthymic disorder,[7] crack cocaine abuse, and nicotine dependence. (R. 137).  His Global Assessment of Functioning[8]

---

[5] Major depressive disorder is "characterized by one or more Major Depressive Episodes without a history of Manic, Mixed, or Hypomanic Episodes." *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision,* 369 (2000) ("*DSM-IV-TR*").  A major depressive episode is "a period of at least 2 weeks during which there is either depressed mood or the loss of interest or pleasure in nearly all activities." *Id* at 349.

[6] Post traumatic stress disorder has as its essential feature "the development of characteristic symptoms following exposure to an extreme traumatic stressor involving direct personal experience of an event that involves actual or threatened death or serious injury, or other threat to one's physical integrity; or witnessing an event that involves death, injury or threat to the physical integrity of another person; or learning about unexpected or violent death, serious harm, or threat of death or injury experienced by a family member or other close associate." *DSM-IV-TR* at 463.  The person's response to the event "must involve intense fear, helplessness, or horror." *Id.*  The characteristic symptoms include "persistent re-experiencing of the traumatic event, persistent avoidance of stimuli associated with the trauma and numbing of general responsiveness, and persistent symptoms of increases arousal." *Id.*  The "full symptom picture must be present for more than 1 month, and the disturbance must cause clinically significant distress or impairment in social, occupational, or other important areas of functioning" *Id.*

[7] Dsythymic disorder is a chronically depressed mood that occurs for most of the day more days than not for at least two years. *DSM-IV-TR* at 376.

[8] Global Assessment of Functioning is "the clinician's judgment of the individual's overall level of functioning." *DSM-IV-TR* at 32.

("GAF") was assessed at 40 presently and for the last year.[9]

The record also contains treatment notes dating from October 20, 2005 through January 23, 2006. (R. 170-75).[10]  On October 20, 2005, Plaintiff was very depressed with a flat affect; his memory loss had taken away his independence because he was forced to rely upon his friend Shanelle and family members. (R. 175). On October 27, 2005, Plaintiff again felt very depressed, having experienced nightmares about being shot or falling off a roof almost every evening; his depression seemed to be exacerbated by his chronic pain. (R. 174). On November 3, 2005, Plaintiff remained depressed and quiet with a flat affect; his lack of independence due to chronic pain and memory loss was increasing his depression.  (R. 173).  On December 5, 2005, Plaintiff was depressed and constantly paranoid; he made little eye contact, had a flat affect and appeared to feel hopeless. (R. 172). On December 19, 2005, Plaintiff reported that he had locked himself in his room for five days, without even eating, because he was afraid someone would hurt him; this paranoia increases when Plaintiff is around people and he hears voices. (R. 171).  On January 23, 2006, Plaintiff still was hearing voices and having homicidal or suicidal dreams; he felt abandoned by his friend, Shanelle. (R. 170).  Plaintiff has trouble differentiating the voices in his head from reality and he tends to repress and forget painful memories. *Id.*

On January 27, 2006, Abiula Babalakin, M.D., prepared a psychiatric evaluation.  (R. 177-80).[11]  Upon examination, Plaintiff was unkempt and made poor eye contact although he was pleasant and established good rapport with the doctor. (R. 179).  Plaintiff was depressed with a flat affect and said he felt "no good."  *Id.*  Plaintiff was oriented to time, place and person, his

---

[9]A GAF score of 40 corresponds to "**Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."  *DSM-IV-TR* at 34.

[10]A second copy of these treatment notes appear at pages 228 to 233 of the administrative record.

[11]A second copy of this evaluation appears at pages 224 to 227 of the administrative record.

concentration was good, and his abstract thinking, information fund, judgment, insight and reliability were fair. *Id.* Dr. Babalakin's diagnosis was Major Depressive Disorder; Plaintiff's GAF was 55.[12] (R. 180).  The doctor believed pharmacotherapy would help, so, he prescribed Prozac.[13]  *Id.*  A discharge summary dated July 12, 2006 from WES confirmed Plaintiff's diagnosis as major depression with a GAF of 55; the patient had refused or withdrawn from treatment, and had no special needs at the time.  (R.237).

D.      Consultative Examinations[14]

Linda F. Mascetti, Ph.D., completed a Psychiatric Review Technique Form ("PRTF")[15] on December 27, 2005.  (R. 154-66).  She found Plaintiff had symptoms related to an Affective Disorder (Listed Impairment 12.04) and a Substance Addiction Disorder (Listed Impairment 12.09).[16] (R. 154).  With respect to the A criteria for Affective Disorder and  Substance Addiction Disorder, Dr. Mascetti found Plaintiff had a depressive syndrome with:  sleep disturbance, psychomotor agitation or retardation, decreased energy, difficulty concentrating or thinking, and thoughts of suicide.  (R. 157).  She also found the following B criteria:  moderate restrictions in his activities of daily living;  moderate difficulties in maintaining social functioning;  moderate difficulties in maintaining concentration, persistence or pace;  and one or two episodes of

---

[12]A GAF score of 55 corresponds to "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers of co-workers)."  *DSM-IV-TR* at 34.

[13]Prozac is indicated for the treatment of major depressive disorder.  *Physicians' Desk Reference*, 1839 (62nd ed. 2008).

[14]Plaintiff's claims of error relate only to his mental impairment, hence the court will only address mental health consultative examinations.

[15]The PRTF is used to document application of the special technique for evaluating mental impairments.  *See* 20 C.F.R. § 416.920a(e).  Part of the special technique involves determining whether the claimant meets or equals a Listed Impairment.  *See* 20 C.F.R. § 416.920a(d)(2).

[16]For Listed Impairment 12.04, the A and B criteria or the C criteria must be satisfied to meet the listing.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04.  Listed Impairment 12.09 requires behavioral or physical changes associated with the regular use of substances that affect the central nervous system and meeting or equaling Listed Impairments 12.02, 12.04, 12.06, or 12.08.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.09.

decompensation, each of extended duration. (R. 164). However, these findings do not satisfy the requirements of either listing. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04(B). Dr. Mascetti further found Plaintiff could not establish the C criteria for either listing. (R. 165).

On the same day, Dr. Mascetti also completed a Mental Residual Functional Capacity Assessment. (R. 167-69). Dr. Mascetti found moderate limitations on Plaintiff's abilities to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. (R. 167-68). She found no other significant limitations. *Id.*

E.    Other Evidence

The record contains a letter dated September 21, 2006 from Akobiwa Bilal, Executive Secretary of New Jerusalem Now. (R. 223). Mr. Bilal stated that Plaintiff had entered New Jerusalem Now on November 21, 2005 for assistance with achieving stability in his recovery from drug addiction. *Id.* For the first two months, Plaintiff could not leave the facility; he was not allowed to work during the first six months. *Id.* Mr. Bilal reported that Plaintiff completed an alternative to violence project, attended parenting classes, and participated in a daily community service program. *Id.* Additionally, Plaintiff received intensive psychotherapy from outside New

Jerusalem Now.[17]  *Id.*

F.     Vocational Testimony

At the administrative hearing, the ALJ asked the VE to consider the following hypothetical person:  a younger individual,[18] with limited education,[19] having th ability to perform medium work,[20] stand for six hours, sit for six hours, and with the restrictions noted in Exhibit 10-F.[21]  (R. 256).  The VE responded that such a person could, nevertheless, perform work as an: (1) industrial cleaner (Dictionary of Occupational Titles ("DOT") code 381.687-018) which offers 4500 jobs regionally and 800,000 nationally; (2) kitchen helper (DOT code 318.687-010) with 18,000 jobs regionally and 1.5 million nationally; and (3) packer (DOT code 559.687-074) which has 4000 jobs regionally and 200,000 nationally.  (R. 257).  The VE further testified that, if Plaintiff's testimony were to be fully credited, he could not work because of time required for treatment and his memory problems. *Id.*

III.    THE ALJ's FINDINGS

After the administrative hearing, the ALJ issued the following relevant[22] findings:

4.     [Plaintiff's] allegations regarding his limitations are not totally credible for the reasons set forth in the body of the

---

[17]At the time of the administrative hearing, Plaintiff was not receiving said therapy.  (R. 244).

[18]A younger individual is a person under age 50.  20 C.F.R. § 416.963(c).

[19]A limited education is generally considered to mean a person who completed schooling between seventh and eleventh grade.  20 C.F.R. § 416.963(b)(3).

[20]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 416.967(c).

[21]Exhibit 10-F is Dr. Mascetti's Mental Residual Functional Capacity Assessment.  (R. 167-69).  Dr. Mascetti found moderate limitations on Plaintiff's abilities to:  understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others.  (R. 167-68).  She found no other significant limitations.  *Id.*

[22]The court only lists the ALJ findings that Plaintiff challenges.

decision.

5.    [Plaintiff] has the following residual functional capacity:  he has no physiological restrictions.  He has "moderate" limitations on the abilities to:  understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with general public; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others.

9.    Considering the types of work that [Plaintiff] is still functionally capable of performing in combination with [Plaintiff's] age, education, and work experience, he could be expected to make a vocational adjustment to work that exists in significant numbers in the national economy.  Examples of such jobs include work as an industrial cleaner, a kitchen helper, and a packer.

10.    [Plaintiff] was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

(R. 19).

## IV.   DISCUSSION

A.   <u>Standard of Judicial Review</u>

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence.  *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large

or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted).  It is more than a mere scintilla of evidence but may be less than a preponderance.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Overall, this test is deferential to the ALJ and the court should grant deference if the ALJ's findings of fact are supported by substantial evidence even when the court, acting *de novo,* might have reached a different conclusion.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  On the other hand, the Commissioner's legal conclusions are subject to plenary review.  *Schaudeck*, 181 F.3d at 431.

B.    Burden of Proof in Disability Proceedings

In order to be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).  Plaintiff may establish a disability through: (a) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (b) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy."  *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  Under the second method, Plaintiff must initially demonstrate that a medically determinable disability prevents him from returning to past employment. *See Brown v. Bowen*, 845

F.2d at 1214.  If Plaintiff proves that his impairment results in functional limitations to performing his past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff is capable of performing given his age, education, and work experience.  *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C.        Review of the Administrative Law Judge's Decision

The ALJ, applying the sequential evaluation process, determined that Plaintiff had the residual functional capacity to perform work existing in the national economy and, consequently, was not disabled.  (R. 13-19).  Plaintiff challenges the ALJ's conclusion that he is not disabled and contends that the ALJ erred by:  (1) failing to consider the effects of his structured living environment on his ability to work; and (2) failing to find that substantial evidence establishes his mental impairment is disabling.  *Plaintiff Anthony E. Warren's Brief and Statement of Issues in Support of Request for Review*, ("Pl.'s Br.") at 7-16.  The Commissioner requests that this court affirm the ALJ's finding that Plaintiff is not disabled.  *Defendant's Response to Request for Review of Plaintiff* ("Def.'s Br.") at 3-20.

1.        The ALJ Properly Evaluated Plaintiff's Allegations Concerning his Structured Living Environment

Plaintiff argues that the ALJ failed to consider the effects of his structured living environment on his ability to work.  Pl.'s Br. at 7-9.  He further maintains that, had the ALJ properly evaluated his structured living environment, the ALJ would have found he satisfied the C criteria for Listed Impairment 12.04.  *Id.* at 15 & n.9.  The Commissioner maintains that Plaintiff failed to sustain his allegations that he resides in a structured living environment which greatly reduces the mental demands placed upon him.  Def.'s Br. at 3-12.

When evaluating the functional limitations caused by a mental impairment, an ALJ should

-11-

consider many factors, "including, but not limited to, chronic mental disorders, *structured settings*, medication, and other treatment." 20 C.F.R. § 416.920a(c)(1) (emphasis added).  In addition, the Mental Disorder Listed Impairment regulations provide the following guidance:

> *Effects of structured settings*.  Particularly in cases involving chronic mental disorders, overt symptomatology may be controlled or attenuated by psychosocial factors such as placement in a hospital, halfway house, board and care facility, or other environment that provides similar structure.  Highly structured and supportive settings may also be found in your home.  Such settings may greatly reduce the mental demands placed on you.  With lowered mental demands, overt symptoms and signs of the underlying mental disorders may be minimized.  At the same time, however, your ability to function outside of such a structured or supportive setting may not have changed.  If your symptomatology is controlled or attenuated by psychosocial factors, we must consider your ability to function outside such highly structured settings.  For these reasons, identical C criteria are included in 12.02, 12.03, and 12.04.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(F).  In order to satisfy the C criteria for Listed Impairment 12.04 that is relevant to this case, Plaintiff must have:  "Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04(C)(3).

Plaintiff maintains that the record establishes that his living arrangement in New Jerusalem Now constitutes a highly structured and supportive setting which reduces his mental demands and, outside of which, he cannot function.  However, the record does not compel this conclusion.

First, Plaintiff's testimony failed to describe precisely how New Jerusalem Now provides a highly structured and supportive environment that lowers his mental demands.  Instead, he simply stated that he lives in a dormitory, attends group therapy three times a day, and performs community service.  *See supra* Section II.B.  Plaintiff further stated that he does not leave the New Jerusalem Now building without accompaniment.  *Id.*  Second, the letter from Mr. Bilal, describing the

arrangements at New Jerusalem Now, specifically indicates that Plaintiff is *not* provided any psychological therapy because New Jerusalem Now is not equipped to offer it. (R. 223). Rather, he is provided support to assist his recovery from substance addiction. *Id.* Moreover, Plaintiff was barred from leaving New Jerusalem Now for only two months, which is well below the C criteria one-year duration requirement. Thus, it does not appear that New Jerusalem Now actually provides any mechanisms to reduce Plaintiff's mental demands and that it does not satisfy the C criteria duration requirement. In the absence of any testimony from Plaintiff describing how his mental demands are reduced and with a lack of documentation from New Jerusalem Now to support a conclusion that his mental demands are reduced, the court finds that there is insufficient evidence to conclude that Plaintiff's living arrangement at New Jerusalem Now reduces his mental demands. Without such proof, there is no basis to conclude that he meets the C requirement for Listed Impairment 12.04 or that the ALJ erred by failing to consider properly Plaintiff's living arrangement at New Jerusalem Now.[23]

2.    The ALJ Properly Evaluated Plaintiff's Credibility Concerning his Depressive Symptoms

Plaintiff argues that the ALJ failed to afford proper credit to his subjective complaints concerning the limitations caused by his mental impairment. Pl.'s Br. at 9-15. The Commissioner maintains that the ALJ properly evaluated Plaintiff's credibility concerning the limitations caused by his mental impairment. Def.'s Br. at 12-19.

The court notes that Plaintiff's brief initially relies upon the Third Circuit's line of cases

---

[23]Plaintiff also suggests that the ALJ should have considered his living arrangement prior to entering New Jerusalem Now in November 2005. *See* Pl.'s Br. at 8. However, there is even less evidence in the record concerning his living arrangements immediately before November 2005. Plaintiff simply testified that he had lived in a boarding house and "was being t[aken] care of," by the owner of the boarding house. (R. 247). This testimony is too vague to conclude reasonably that Plaintiff's living arrangements in the boarding house were highly supportive and structured to reduce his mental demands.

which concern the evaluation of a claimant's subjective complaints of pain.  *See* Pl.'s Br. at 9-10

(citing *Mason v. Shalala*, 994 F.2d at 1067, 1071 and *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d

Cir. 1984)).   Under that line of cases, once the claimant has a condition which could reasonably

produce some pain, his complaints of pain must be afforded great weight and cannot be rejected

unless there is contrary medical evidence in the record.  *See Mason*, 994 F.2d at 1067-68.  However,

Plaintiff's allegations concern his mental impairment, not physical pain.  The Third Circuit has not

extended *Mason* and *Green* principles beyond subjective complaints of pain; therefore, this court

also declines to do so.  Plaintiff's testimony concerning his mental impairment should be considered

pursuant to Social Security Ruling ("SSR") 96-7p, which indicates that Plaintiff's credibility

concerning his symptoms must be evaluated by considering the entire case record; the ALJ must

provide specific explanations for his credibility determination to make it sufficiently clear what

weight was accorded Plaintiff's statements and the reasons for that weight.[24]  SSR 96-7p, 1996 WL

374186, *4.

        In his formal findings, the ALJ stated that Plaintiff's "allegations regarding his limitations

are not totally credible for the reasons set forth in the body of the decision." (R. 19).  In his decision,

the ALJ accepted Plaintiff's testimony concerning his depressive symptoms in part, having found

no treatment records after Plaintiff's January 27, 2006 interview with a WES clinical psychiatrist.

(R. 16).   At that time, Plaintiff's GAF was 55 and he was observed to have, *inter alia*, good

concentration and  intact memory; said findings directly contradicted Plaintiff's allegations of poor

concentration and memory.  In light of Plaintiff's relatively sparse[25] treatment records, the court finds

---

[24]The principal differences between the Third Circuit line of cases on pain and the SSR 96-7p standard are that, under SSR 96-7p, great weight need not be afforded  to a claimant's testimony about his symptoms and contrary medical evidence is not required to reject a claimant's testimony concerning symptoms.

[25]The record contains only a Comprehensive Biopsychosocial Evaluation, treatment notes for six days, a psychiatric evaluation, and a discharge summary.  (R. 122-41, 170-75, 177-80, 237).

that the ALJ appropriately discharged his duty under SSR 96-7p.  Furthermore, Plaintiff's relatively positive evaluation on January 27, 2006 does not provide substantial evidence to warrant fully crediting his subjective complaints.  Inasmuch as the ALJ properly rejected Plaintiff's claims of disabling mental limitations, he appropriately excluded the VE's opinions that relied upon Plaintiff's subjective symptoms.  The VE's list of jobs Plaintiff can perform, thus, was supported by substantial evidence.[26]

## V.    CONCLUSION

After a thorough review of the record, this court finds that the Commissioner's final decision is supported by substantial evidence and contains no reversible legal error.  Hence, judgment should be entered for the Commissioner.  Accordingly, I make the following:

## RECOMMENDATION

AND NOW, this 30th day of September, 2008, I respectfully recommend that:

1.     The Report and Recommendation be APPROVED and ADOPTED;

2.     The Plaintiff's Request for Review be DENIED; and

3.     Judgment be ENTERED in favor of the Commissioner of the Social Security Administration.

It be so ORDERED.

   _/s/ Carol Sandra Moore Wells_____
CAROL SANDRA MOORE WELLS
United States Magistrate Judge

---

[26]The Commissioner argues that the ALJ's evaluation of Plaintiff's symptoms is also supported by a treating physician's finding that Plaintiff is a malingerer.  *See* Def.'s Br. at 14 (citing R. 112).  However, this argument fails for two reasons. First, the ALJ did not rely upon the malingerer diagnosis, hence, the court may not do so either.  *See Fargnoli v. Massanari*, 247 F.3d. 34, 44 n.7 (2001) (noting that an ALJ's decision can only be evaluated based upon the grounds the ALJ actually relies upon).  Second, the treating physician found Plaintiff was a malingerer with respect to his back pain, (R. 112), not his mental impairment, hence, the malingerer finding is inapposite.

-15-